UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FUSION ELITE ALL STARS *et al*., ) | |
| ) | |
| Movants, ) | Case No._____ |
| ) | |
| v. ) | |
| ) | |
| NFINITY ATHLETIC LLC, ) | |
| ) | |
| Respondent. ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL NFINITY ATHLETIC LLC TO
COMPLY WITH SUBPOENA DUCES TECUM**

## TABLE OF CONTENTS

I.    BACKGROUND ................................................................................1

II.   HISTORY OF DISCOVERY DISCUSSIONS ................................................4

III.  ARGUMENT ...................................................................................5

    **A.**   Legal Standards ............................................................................5

    **B.**   Plaintiffs' Reasonable Requests for Production ..................................8

        **1.**   Request Nos. 7 and 17 through 22 (Ex. 2) .............................9

        **2.**   Request Nos. 11, 23, 24, 25, 28, and 29 (Ex. 2) ......................12

        **3.**   Request Nos. 9, 26, and 27 (Ex. 2) .............................................14

        **4.**   Request No. 33 (Ex. 2).............................................................14

    **C.**   The Proportionality of the Documents and ESI Sought.....................15

    **D.**   Nfinity Only Makes Form, Unjustified Objections and Has Not Produced Documents That It Stated It Would. ...................................18

IV.   CONCLUSION...............................................................................19

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alcoa, Inc. v. Universal Alloy Corp.*,
    2016 WL 11499567 (N.D. Ga. Sept. 9, 2016)................................................15

*Allan v. Realcomp II, Ltd.*,
    2013 WL 12333444 (E.D. Mich. Mar. 30, 2013)........................................11

*Arrowpac Inc. v. Sea Star Line, LLC*,
    2014 WL 12617575 (M.D. Fla. Sept. 11, 2014) ..........................................11

*Butts v. Tyco Healthcare Grp. LP*,
    2007 WL 1545232 (N.D. Ga. May 24, 2007) ................................................6

*Carr v. State Farm Mut. Auto. Ins. Co.*,
    312 F.R.D. 459 (N.D. Tex. 2015)............................................ 15, 16, 17, 18

*Chapple v. State of Ala.*,
    174 F.R.D. 698 (M.D. Ala. 1997)................................................................18

*Conwood Co., L.P. v. U.S. Tobacco Co.*,
    290 F.3d 768 (6th Cir. 2002) ...................................................................7, 11

*Fadalla v. Life Auto. Prod., Inc.*,
    258 F.R.D. 501 (M.D. Fla. 2007) ................................................................8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996).................................................................11

*In re Uranium Antitrust Litig.*,
    480 F. Supp. 1138 (N.D. Ill. 1979)...............................................................7

*Kemper v. Equity Ins. Co.*,
    2016 WL 7428215 (N.D. Ga. Apr. 29, 2016)..............................................19

*Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*,
    322 F.R.D. 1 (D.D.C. 2017) ................................................................ 16, 17

*Richter Concrete Corp. v. Hilltop Concrete Corp.*,
  691 F.2d 818 (6th Cir. 1982) .............................................................................7

*Se. Mech. Servs., Inc. v. Brody*,
  2009 WL 3095642 (N.D. Ga. June 22, 2009) .................................................8

*Sprint Commc'ns, Inc. v. Calabrese*,
  2019 WL 9598506 (S.D. Fla. Aug. 20, 2019) ...............................................19

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
  295 F.R.D. 517 (N.D. Fla. 2013)....................................................................6

*United States v. Blue Cross Blue Shield of Mich.*,
  2012 WL 4513600 (E.D. Mich. Oct. 1, 2012)................................................7

**Statutes**

15 U.S.C. § 2 ..............................................................................................................6

**Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................. 6, 15, 18

Fed. R. Civ. P. 26(g)(1)........................................................................................18

Fed. R. Civ. P. 45(a)(1)(A)(iii) ............................................................................5

Fed. R. Civ. P. 45(a)(1)(D) ..................................................................................18

Fed. R. Civ. P. 45(d)(1)...........................................................................................7

Plaintiffs Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics,

Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity

Center, Kathryn Anne Radek, Lauren Hayes, and Janine Cherasaro (collectively,

"Plaintiffs"), individually and on behalf of all others similarly situated, move

this Court, pursuant to Fed. R. Civ. P. 37 and 45(d)(2)(B)(i), for an order

compelling non-party Nfinity Athletic, LLC. ("Nfinity") to respond to

Requests No. 7, 9, 11, 17-29, and 33 of the Subpoena Duces Tecum

("Subpoena") properly served by Plaintiffs pursuant to Rule 45 in November

2020. (Ex. 1.) [1]

## I.    BACKGROUND

Plaintiffs are three All Star Gyms and three parents of current and former All

Star Cheerleaders. (Ex. 3 ¶¶ 29-39.)[2] They seek this Court's assistance after

serving Nfinity with a Subpoena nearly 14 months ago in the class action styled

*Fusion Elite, et al. v. Varsity Brands, et al.*, Case No. 2:20-cv-02600-SHL-cgc,

---

[1] Plaintiffs originally served thirty-three (33) document requests, but Plaintiffs have narrowed their requests to only Requests No. 7, 9, 11, 17-29, and 33.

[2] Unless otherwise indicated, capitalized terms have the same meaning as those used in the Consolidated Class Action Complaint, attached as Exhibit 3. "All Star Cheer" is an elite, competitive type of cheerleading that involves tumbling, stunts, pyramids, and dance. (Ex. 3 ¶ 3.) It is a sport in and of itself where the sole focus is cheerleading and there is no other sporting event associated with the All Star Team. (*Id*. ¶ 4.)

pending in the United States District Court for the Western District of Tennessee

(the "*Varsity* Litigation"). (Ex. 1.) The *Varsity* Litigation centers around an alleged

scheme by Defendants Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit

Fashions & Supplies, LLC (collectively, "Varsity"); and the U.S. All Star

Federation Inc. ("USASF") (Varsity and USASF together, "Defendants") to

maintain and enhance Varsity's monopoly power in the All Star Apparel and All

Star Competition Markets (collectively, the "Relevant Markets") in violation of

Section 2 of the Sherman Act. (Ex. 3 ¶¶ 9, 53.)

     Plaintiffs allege that Varsity "has—through an anticompetitive scheme

consisting of a series of intentional and methodical business maneuvers

implemented in combination with the USASF—gained and maintained significant

control of every aspect of 'All Star Cheer.'" (*Id*. ¶ 2.) Plaintiffs bring claims

against Defendants under Section 2 of the Sherman Act, 15 U.S.C. § 2, for

monopolization and conspiracy to monopolize the Relevant Markets. In the *Varsity*

Litigation, Plaintiffs seek to represent a class of entities and natural persons that

directly paid Varsity for: (a) registration, entrance, spectator, or other fees and

expenses associated with participation in one or more All Star Competitions; or (b)

All Star Apparel. (*Id.* ¶ 40.)

Nfinity is an independent All Star Apparel manufacturer. (*Id*. ¶ 191.)
Plaintiffs allege that Nfinity and other All Star Apparel companies are locked out
of a large share of the All Star Apparel Market as a result of Defendants' unlawful
and exclusionary conduct. (*Id*. ¶¶ 102-110, 191.) The Exclusionary Scheme
described in Plaintiffs' complaint hinges first on Varsity's systematic acquisition
of rivals in the Relevant Markets and its subsequent use of its monopoly power to
impose exclusionary agreements on All Star Gyms, requiring such Gyms to attend
Varsity's All Star Competitions and purchase Varsity's All Star Apparel
exclusively or nearly so. (*Id*. ¶ 9.) Plaintiffs further allege that Varsity controls
USASF, the governing body for All Star Cheer, through its board of directors and
direct financial support. (*Id*. ¶¶ 195-205.) Plaintiffs allege that Varsity uses its
control of USASF to promulgate rules that favor Varsity over All Star Apparel
rivals like Nfinity (*id*. ¶¶ 106, 140-142, 154); allow or instruct judges to
"advantage All Star Teams that wear Varsity apparel" (*id*. ¶¶ 107, 154); and restrict
rival manufacturers' access to booth space at All Star Competitions. (*Id*. ¶¶ 110,
163, 190.)

Plaintiffs allege that the challenged exclusionary conduct has specifically
impacted Nfinity in ways highly relevant to the *Varsity* Litigation: "Nfinity,
another All Star Apparel brand, has also been prohibited from selling its products

at once-independent All Star Competitions that were acquired by Varsity, including CheerSport's numerous competitions and Battle Under the Big Top." (*Id*. ¶ 191.)

The Relevant Markets at issue here involve billions of dollars in commerce. Varsity was acquired by Bain Capital in 2018 for nearly $3 billion, and it raised $185 million in new capital in less than 10 days during the pandemic last year. (Ex. 3 ¶¶ 38, 59.) All Star Cheer is notoriously expensive for All Star Gyms and parents, with a single season costing between $3,000 and $6,000 per All Star Cheerleader. (*Id*. ¶ 5.) An estimated 100,000 to 450,000 athletes participate in the sport each year. (*Id*. ¶ 60.)

The volume of documents and electronically stored information ("ESI") that Plaintiffs seek is well within the ranges seen in cases of similar magnitude, and the requests for production ("RFP(s)" or "Request(s)") attached to the Subpoena are important to Plaintiffs' allegations. (Ex. 3 ¶ 2.) Plaintiffs respectfully request that this Court order Nfinity to comply with its obligations thereunder.

## II.    HISTORY OF DISCOVERY DISCUSSIONS

Plaintiffs' subpoena was served on Nfinity on November 12, 2020. (Ex. 5, ¶ 2.)  Nfinity served a formal Response on December 7, 2020. (Ex. 2.) In its Response, Nfinity stated it would be willing to produce documents to thirteen (13)

of Plaintiffs' document requests. (Ex. 2.) Counsel for Nfinity, John Christy of

Schreeder, Wheeler and Flint, LLP, reached out to Plaintiffs' counsel Charles

Barrett on December 11, 2020 via email. (Ex. 5, ¶ 3.)  On December 17, 2020,

counsel for both Plaintiffs and Nfinity spoke on the telephone. (*Id*.) Over the

course of the next several months the parties have several telephone calls about

Nfinity's potential production, but no documents were produced. (*Id*.) Over these

same months, Plaintiffs' counsel left several messages and sent multiple emails

that went unanswered. (*Id*.) On June 4, 2021, Mr. Christy told Mr. Barrett on a

telephone call that Nfinity was very hesitant to produce information because of

fear of possible reprisal by Varsity. (*Id*. ¶ 4.) Since that time, Plaintiffs' efforts to

communicate with Nfinity have gone largely unanswered. To this day, Nfinity has

not produced any documents. (*Id*.)

## III.   ARGUMENT

### A.   Legal Standards

This Court should enforce Plaintiffs' narrowly tailored subpoena against an

important third party in this significant antitrust class action. Rule 45 permits

parties to issue subpoenas commanding non-parties to produce documents in their

possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). The standards set

forth in Rule 26 apply with equal force to such subpoenas:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 521 (N.D. Fla.), *objections overruled,* 981 F. Supp. 2d 1207 (N.D. Fla. 2013). In short, "[t]he scope of allowable discovery is determined by the claims (and defenses) raised in the case." *Butts v. Tyco Healthcare Grp. LP*, No. CIVA 106-CV-1377, 2007 WL 1545232, at *2 (N.D. Ga. May 24, 2007).

Plaintiffs here bring monopolization and conspiracy claims under the Sherman Act, 15 U.S.C. § 2. (Ex. 3 ¶¶ 243-247, 249-261.) These claims require evidence of:

(1) <u>Monopoly Power</u>: a defendant had monopoly power—or conspired with a defendant that did;

(2) <u>Willful Acquisition, Maintenance, or Use of that Power through Anticompetitive Conduct</u>: a defendant deliberately achieved or maintained that monopoly power other than by competing on the merits—or conspired with the specific intent to monopolize and took overt actions to support monopolization;

(3) <u>Causation of Anticompetitive Harm</u>: a defendant used the resulting monopoly power to increase prices above competitive

6

      levels, impair competitors, decrease output below competitive
      levels, decrease quality, or impose other anticompetitive
      harms; and

    (4) <u>Concerted Action</u>: a defendant collaborated with another to
        harm competition (required only for a conspiracy to
        monopolize, not for monopolization).

*See Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782, 788-89 (6th Cir.

2002) (elements of monopolization claim in Sixth Circuit where *Varsity* Litigation

is pending); *Richter Concrete Corp. v. Hilltop Concrete Corp.,* 691 F.2d 818, 827

(6th Cir. 1982) (elements of claim for conspiracy to monopolize).

      "[T]he heart of any American antitrust case is the discovery of business

documents. Without them, there is virtually no case." *In re Uranium Antitrust*

*Litig.*, 480 F. Supp. 1138, 1155 (N.D. Ill. 1979). And given the scope of this

antitrust class action and the amount of money involved, "[t]he public policy

implications in this matter favor extremely broad discovery." *United States v. Blue*

*Cross Blue Shield of Mich.*, No. 10-cv-14155, 2012 WL 4513600, at *3 (E.D.

Mich. Oct. 1, 2012). Thus, while Plaintiffs are obliged under Rule 45 to "take

reasonable steps to avoid imposing undue burden or expense on a person subject to

the subpoena," Fed. R. Civ. P. 45(d)(1), such obligations must be considered in the

context of the scope of the *Varsity Litigation*.

### B.    Plaintiffs' Reasonable Requests for Production

Plaintiffs seek, through the Subpoena, documents and ESI that are highly relevant, narrowly tailored, and do not impose an undue burden on Nfinity. The documents and data sought are well within the confines of Rules 26, 34, and 45. The Subpoena seeks only highly relevant information, as illustrated by the Declaration of experienced and highly respected economist, Dr. Hal Singer, submitted to this Court in support of Plaintiffs' motion.[3] (Ex. 4.)

"When ruling on motions to compel in the Rule 45 context, courts apply a balancing test, weighing the probative value of the documents sought against the burden of complying with the subpoena." *Se. Mech. Servs., Inc. v. Brody*, 2009 WL 3095642, at *3 (N.D. Ga. June 22, 2009). "Other factors this Court should consider are the relevance of the requests, the breadth of the request, the time period covered by the requests, and the particularity with which the documents are described." *Fadalla v. Life Auto. Prod., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007). Of course, a subpoenaed non-party's desire to help or hurt a party's claims (or its subjective belief about what impact, if any, responsive information will have on the litigation) is not part of the Court's analysis under Rule 45.

---

[3] Mr. Singer is a noted microeconomist with significant experience testifying in state and federal courts and regulatory agencies. (Ex. 4)

8

### 1.    Request Nos. 7 and 17 through 22 (Ex. 2)

These requests seek (1) transactional sales data for Apparel; (2) Apparel cost data; and (3) data relating to prices, fees, rebates, discounts, terms of sale, or any other financial arrangement regarding Apparel. (*Id*. ¶ 15.) Such data "is the lifeblood of economic analyses presented in all or almost all antitrust cases." (*Id*. ¶ 14.) "It generally reflects (1) all sales transactions between a given party and consumers in the relevant markets at issue, including all prices net of discounts, price adjustments, and returns; and (2) the incremental cost to the seller for those sales (e.g., selling costs, labor costs, cost of materials, etc.)." (*Id*. ¶ 2.) "This kind of data is critical to analyzing for antitrust analysis, such as evaluating the impact of Defendants' conduct on prices over time and to quantify the aggregate damages to the proposed Class of Gyms and parents." (*Id*. ¶ 14.)

Nfinity's transactional data will be used as part of an econometric analysis "to determine whether Varsity was able to successfully leverage its market power in the Apparel market to either (1) inflate the price of its own All Star Apparel prices above competitive levels, or (2) raise the costs of its rivals by, for example, denying Nfinity economies of scale." (*Id*. ¶17.) Specifically, given that Nfinity appears not to have engaged in similarly anticompetitive conduct, it is possible that after controlling for other factors, that Nfinity's prices could reflect a more

competitive baseline, and thus be a measure of impact or damages from Varsity's alleged misconduct. Alternatively, Nfinity's transactional data could also reflect that Varsity's alleged anticompetitive conduct affected Nfinity's prices. (*Id.* ¶ 14.)

Analysis "over time, or 'time-series analysis,' is a standard econometric tool designed to analyze how changes in one variable (the 'treatment variable') over the course of a specific time period are associated with changes in some outcome variable (the 'dependent variable')." (*Id.* ¶ 16.) These "analyses over time tell us how two variables move in conjunction with one another, accounting for other relevant variables as appropriate." (*Id.*) Nfinity's All Star Apparel prices, when compared to Varsity's competitor's prices, are a potentially relevant dependent variable here. (*Id.* ¶17) Comparing Nfinity's and Varsity's prices over time could "allow[] Plaintiffs to assess whether changes in Varsity's Apparel prices were due to industry-wide changes (say, from increased raw material or shipping costs) or due to Varsity's alleged anticompetitive conduct." (*Id.*) This comparison, to take two examples, "is analogous to controlling for inflation or unemployment when studying changes in wages." (*Id.*) The production of this type of data by third parties is a routine part of antitrust litigation. (*Id.* ¶18)

With respect to the time period, Plaintiffs' Complaint encompasses events going back to 2003 and acquisitions of Varsity's competitors going back to 2008.

(Ex. 3 ¶¶ 71, 73, 168, 197.) In 2015, Varsity acquired its former rival The Jam Brands (which had once sold All Star Apparel). Nfinity's data from both before and after the JAM Brands acquisition up to the present could potentially be used to demonstrate how Defendants' conduct, including later acquisitions, impacted Nfinity's market share and prices in the All Star Apparel market. (Ex. 4 ¶¶ 16-17.) As noted above, this sort of "time-series analysis" is a common and critical piece of evidence in this type of antitrust litigation. (*Id*. ¶16.) "The 'before and after' theory compares . . . the prices [plaintiff] paid during the period the violation continued with . . . prices paid prior to the beginning of the violation or after its termination." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 521 (S.D.N.Y. 1996); *accord Conwood*, 290 F.3d at 793 (approving methodology using data from seven years before and seven years after benchmark date); *Allan v. Realcomp II, Ltd.*, No. 10-cv-14046, 2013 WL 12333444, at *6 (E.D. Mich. Mar. 30, 2013) (approving of "before and after" analysis to determine "but-for cause of a statistically significant rise in prices in the relevant market"); *Arrowpac Inc. v. Sea Star Line, LLC*, No. 12-cv-1180, 2014 WL 12617575, at *3 (M.D. Fla. Sept. 11, 2014) ("[p]re and post conspiracy information … [is] directly relevant to Plaintiffs' damages because the "before and after" method … requires such information").

11

The only source of Nfinity's data is from Nfinity itself, and because Varsity has such a large share of the market and so few competitors, Nfinity's data is particularly important. It is highly relevant to the third element of Plaintiffs' monopolization claim, anticompetitive harm, as well as to proof of impact and damages to members of the Class. Importantly, the collection of the data presents a minimal burden, and Plaintiffs' request is proportional to the needs of the case. Plaintiffs have only "request[ed] a direct extraction of data stored in Nfinity's systems in the ordinary course of business." (Ex. 4 ¶¶ 2, 19.) This often requires no more than the push of a button. (*Id*. ¶ 19.) And a less detailed productions, such as aggregate data or average data, would not be sufficient for Plaintiffs' expert to perform the necessary analyses. (*Id*.) Both Varsity and Nfinity sell hundreds of All Star Apparel Products, and Plaintiffs can only perform an "apples-to-apples comparison" with Nfinity's actual transactional dataset. (*Id*.)

### 2.    Request Nos. 11, 23, 24, 25, 28, and 29 (Ex. 2)

These requests target documents related to Nfinity's ability to compete in the All Star Apparel Market and its relationship with Defendants. Plaintiffs ask this Court to compel a narrower set of documents: (a) internal communications at Nfinity related to Varsity and/or USASF; and (b) external communications between Nfinity and any other entity or person—such as an All Star Gym, Team,

Athlete, or Competition producer—discussing Varsity and/or USASF. This would include communications discussing (a) agreements or references to agreements between Nfinity and Varsity or Nfinity and USASF; (b) Nfinity's ability to showcase or sell merchandise at Varsity or USASF events, including any policies or practices regarding the same; and (c) the *Varsity* Litigation.

Plaintiffs cannot speculate as to the volume of documents, the number of custodians, or the cost that would be associated with retrieving these documents because Nfinity has refused to provide any details regarding the burden it claims these requests create. But it is clear that such documents would relate to whether Defendant USASF treats Varsity more favorably than other All Star Apparel manufacturers like Nfinity, the extent of Varsity's control over Defendant USASF, and whether Defendants' conspiracy and Varsity's monopoly power impair Nfinity's ability to compete in the All Star Apparel Market. Nfinity is the sole custodian of its internal communications, and it is the best and most efficient source of communications between Nfinity and other non-parties to the *Varsity* Litigation. Plaintiffs are unable to tailor the requests further due to Nfinity's refusal to identify its custodians, how its documents are kept, or why and how the requests are burdensome.

### 3.    Request Nos. 9, 26, and 27 (Ex. 2)

These requests relate to the impact of Varsity and its Network Agreements and Family Plans on Nfinity's ability to compete in the All Star Apparel Market.[4] Plaintiffs ask this Court to compel production of all documents and communications reflecting or discussing (a) these agreements and (b) how Varsity's acquisition of other All Star Apparel companies, and Competition producers has impacted Nfinity. This can be accomplished by searching the ESI of custodians, to be identified by Nfinity, using the search terms "Network Agreement*" and "Family Plan*," and the volume of documents likely to be returned is low given that Nfinity does not, to Plaintiffs' knowledge, use these terms in its negotiation of contracts with its own customers and business partners.

### 4.    Request No. 33 (Ex. 2)

This request seeks documents and communications referencing or relating to Plaintiffs. Retrieving such documents would simply require the use of search terms "Fusion Elite," "Spirit Factor," "Stars and Stripes" or "Stars & Stripes," "Radek," "Hayes," and "Cherasaro." Nfinity has not, to Plaintiffs knowledge, made any

---

[4] The Network Agreement and Family Plan are exclusionary contracts Varsity imposes on All Star Gyms to compel their exclusive or near-exclusive attendance at Varsity's All Star Competitions and exclusive or near-exclusive purchase of Varsity's All Star Apparel. (Ex. 3 ¶¶ 13-15, 174-185)

effort to determine the volume of documents such a search would generate, but Plaintiffs expect that the number would be minimal (and would almost certainly be zero for the individual Plaintiffs) and impose little burden on Nfinity.

### C.    The Proportionality of the Documents and ESI Sought

"[T]he amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to—in order to successfully resist a motion to compel—specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or fails the required proportionality calculation or is otherwise objectionable." *Alcoa, Inc. v. Universal Alloy Corp.*, 2016 WL 11499567, at *3 (N.D. Ga. Sept. 9, 2016). The factors this Court should consider include:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The first proportionality factor looks to "the significance of the substantive issues, as measured in philosophic, social, or institutional terms." *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015). Plaintiffs allege monopolization of a multi-million-dollar industry impacting hundreds of thousands

15

of gyms, cheerleaders, and their parents. (Ex. 3 ¶¶ 9, 38, 59-60.) This factor weighs in Plaintiffs' favor.

"Under the second proportionality factor, courts should compare[ ] the cost of discovery to the amount in controversy to determine [the proposed discovery's] proportionality." *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7 (D.D.C. 2017) (citations and quotations omitted). USASF conspired with Varsity, a business worth at least $2.5 billion that raised $185 million in new capital in less than 10 days during the pandemic last year. (Ex. 3 ¶¶ 38, 59.) All Star Cheer is, in fact, notoriously expensive, with a single season costing between $3,000 and $6,000 per All Star athlete, with an estimated 100,000 to 450,000 athletes participating in the sport each year. (*Id*. ¶¶ 5, 60.) Nfinity has not disclosed the volume of documents or ESI at issue, the number of custodians involved, the cost associated with search and retrieval of those documents or ESI, or even how they are stored. Without any evidence that the RFPs result in some sort of excessive cost for Revel, the second proportionality factor weighs in Plaintiffs' favor.

The third factor, access to relevant information, looks at "information asymmetry." *Carr*, 312 F.R.D. at 467.

> One party – often an individual plaintiff – may have very little discoverable information. The other party may have vast amounts of

16

> information, including information that can be readily retrieved and
> information that is more difficult to retrieve. In practice these
> circumstances often mean that the burden of responding to discovery
> lies heavier on the party who has more information, and properly so.

*Id*. As noted in Section III.B *supra*, the vast majority of documents and ESI sought

are solely in the hands of Nfinity or most easily acquired through Nfinity, and this

motion to compel is the only way for Plaintiffs to obtain them. *Oxbow*, 322 F.R.D.

at 8. This factor weighs in Plaintiffs' favor.

The fourth factor looks at the parties' resources. *Id*. It has been publicly

reported that Nfinity's revenue was at least $10 million in the last year alone.[5]

Nfinity cannot reasonably argue that it cannot bear the costs of discovery. Thus,

this factor also weighs in Plaintiffs' favor.

The fifth factor asks "whether '[t]he issues at stake are at the very heart of

[the] litigation." *Oxbow*, 322 F.R.D. at 8. Nfinity does not legitimately dispute that

it possesses relevant documents important to this litigation. It merely makes

boilerplate relevance objections without explaining how the RFPs are unrelated to

Plaintiffs' Sherman Act claims. At the same time, Dr. Singer provides this Court

with a clear explanation of the importance of Nfinity's transactional data, and by

---

[5] https://incfact.com/company/nfinityathletic-atlanta-ga/

extension the other documents Plaintiffs seek, to this litigation, so the fifth factor weighs in Plaintiffs' favor.

The sixth and final factor asks whether the burden or expense of the proposed discovery outweighs its likely benefit. *Carr*, 312 F.R.D. at 468. Such burden or expense "should be determined in a realistic way." *Id*. Again, Nfinity has provided "little information about the burden or expense of responding." *Id*. at 467. Thus, it cannot meet its burden of demonstrating how the discovery sought falls outside the scope of Rule 26(b)(1), and this factor weighs in Plaintiffs' favor.

### D.     Nfinity Only Makes Form, Unjustified Objections and Has Not Produced Documents That It Stated It Would.

"A command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D). Those responses, and any objections, must be signed and certified as complete, correct, warranted by existing law, nonfrivolous, and substantially justified. Fed. R. Civ. P. 26(g)(1). "Substantial justification" entails a reasonable basis in both law and fact, such that there is a genuine dispute or if reasonable people could differ. *Chapple v. State of Ala.*, 174 F.R.D. 698, 701 (M.D. Ala. 1997).

Additionally, "[t]he party resisting discovery bears the burden of showing 'specifically how the objected-to request is unreasonable or otherwise unduly

burdensome.'" *Kemper v. Equity Ins. Co.*, No. 1:15-CV-2961, 2016 WL 7428215, at *4 (N.D. Ga. Apr. 29, 2016). Courts in this district have made clear that a nonparty's objections under Rule 45 are subject to the same requirements as any other party. *Id*. at *2. "Objections that state that a discovery request is 'vague, overly broad or unduly burdensome' are, standing alone, meaningless and will be found meritless by this Court." *Sprint Commc'ns, Inc. v. Calabrese*, 2019 WL 9598506, at *5 (S.D. Fla. Aug. 20, 2019).

Nfinity's responses fails these tests. For instance, Nfinity vaguely asserts over and over those certain requests are "intended only to annoy, harass and burden Nfinity." (Ex. 2, Nos. 1, 2, 3, 4, 5, 6, 7, 8, 10, 17, 18, 19, 20, 21, 22, 26, 27, 33). Nfinity makes no effort to describe why these requests impose such a burden or how the requests "harass" Nfinity. Moreover (and as stated before), Nfinity stated in its Response that it was willing to produce documents answering thirteen of Plaintiffs' document requests. No documents have been produced, and communication from Nfinity has stopped.

## IV.   CONCLUSION

Nfinity should be required to respond to the subpoena and produce the requested information immediately.

Dated:  March 2, 2022.

                             Respectfully submitted,

                             **HALL & LAMPROS, LLP**

                             /s/  *Andrew Lampros*

                             Andrew Lampros
                             Ga. Bar #432328

                             400 Galleria Pkwy
                             Suite 1150
                             Atlanta, Georgia 30339
                             Telephone: (770) 835-4935
                             alampros@hallandlampros.com

                             Victoria Sims
                             **CUNEO GILBERT & LADUCA, LLP**
                             4725 Wisconsin Avenue NW, Suite 200
                             Washington, DC 20016
                             Telephone: (202) 789-3960
                             jonc@cuneolaw.com
                             kvandyc@cuneolaw.com
                             vicky@cuneolaw.com

                             Eric L. Cramer
                             Mark R. Suter
                             **BERGER MONTAGUE PC**
                             1818 Market Street, Suite 3600
                             Philadelphia, PA 19106
                             Telephone: (215) 875-3000
                             hlmontague@bm.net
                             ecramer@bm.net
                             msuter@bm.net

                             Gregory S. Asciolla
                             Karin E. Garvey
                             Veronica Bosco

**LABATON SUCHAROW LLP**
140 Broadway New York, NY 10005
Telephone: (212) 907-0700
gasciolla@labaton.com
kgarvey@labaton.com
vbosco@labaton.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2022, the foregoing document was filed with the court via the Electronic Case Filing (ECF) system and duly served in accordance with the provisions of Rule 5 of the Federal Rules of Civil Procedure, by both U.S. Priority Mail and electronic mail, to the following recipients:

John Christy
SCHREEDER, WHEELER & FLINT, LLP
1100 Peachtree Street N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  (404) 681-3450
jchristy@fllp.com

*Attorney for Nfinity Athletic LLC.*

Adam S. Baldridge
Matthew S. Mulqueen
BAKER DONELSON BEARMANN
CALDWELL & BERKOWITZ
165 Madison Ave Ste 2000
Memphis, TN 38103
Tel: 901-526-2000
abaldridge@bakerdonelson.com
mmulqueen@bakerdonelson.com

George S. Cary
Mark W. Nelson
Alexis Collins
Steven J. Kaiser
CLEARY GOTTILEB STEEN &
HAMILTON LLP
2112 Pennsylvania Avenue NW Ste 1000
Washington, DC 20037
Tel: 202-974-1500
gcary@cgsh.com
mnelson@cgsh.com

alcollins@cgsh.com
skaiser@cgsh.com

*Attorneys for Varsity Brands, LLC, Varsity
Spirit Fashions & Supplies, Inc., and Varsity
Spirit, LLC*

Grady M. Garrison
Nicole D. Berkowitz
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.
165 Madison Ave. Ste. 2000
Memphis, TN 38103
Tel: 901-526-2000
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com

*Attorneys for Defendant U.S. All Star
Federation, Inc.*

/s/  *Andrew Lampros*
Andrew Lampros

23